This case is Baseload Energy v. Brian Roberts, 2010-1053. Mr. Wehrauch? Thank you, Your Honor. May it please the Court, my name is John Wehrauch from the Minneapolis law firm of Dickey, Billigan & Sager. I'm here today on behalf of Baseload Energy. Wehrauch? Wehrauch. Wehrauch. Thank you, Your Honor. The central issue before the Court on this appeal... Does the settlement agreement bar an infringement suit by Roberts against Baseload? The settlement agreement in this case, Your Honor, would not bar an infringement suit because there was an option agreement involved in the settlement, an option to a license agreement, and the option was not exercised. So if that's the case, then how can it be interpreted to bar an invalidity challenge? Well, that's exactly our point, Your Honor, is we don't read this case, this settlement agreement, to support any restrictions on validity challenges in the future, but the lower court found otherwise. Well, it would certainly be an odd reading to say that it preserves an infringement suit but eliminates an invalidity defense when there's no specific language to that. We exactly agree, Your Honor. That's our point exactly. Your briefs didn't seem to focus on that. The briefs focused on the Lear case and Flexfoot and other things. I think the concern was that, in fact, a right to bring a future patent infringement case had been preserved, but a right to raise a defense of patent validity had not. That was a predicament that we foresaw from that interpretation of the lower court foreclosing our opportunity to challenge validity was that the right to bring an action for patent infringement was reserved or preserved, but apparently the right to raise defense of patent validity was not. That was exactly the concern. Did your brief make that point? It did not, Your Honor. It was more premised on just addressing the error of the lower court in finding that the patent invalidity defense had been waived or restricted. Well, if you didn't raise it in your blue brief, then is it not waived? Well, I don't believe it is, Your Honor. I don't think we necessarily tied the two together that it was predicated on the fact that a right to bring an infringement case necessarily forestalled or foreclosed the right to challenge validity. We challenged the right to challenge validity on other bases, and so we at least didn't make that argument, but we did raise other arguments based on this court's precedent on the narrow set of circumstances under which a settlement agreement can be determined to waive patent validity challenges. So we had other independent bases, and it was not predicated on the fact that there had been an impact or reservation or an inability because of the failure to exercise the option. Yeah, but the point I'm trying to make is even if you raised other grounds for appeal, if you didn't raise this particular ground, haven't you waived it? I don't know that we waived any right to challenge the patent validity restriction that the court found based on not arguing or addressing in our brief that there had been a reservation of the right to bring a patent. It seems to be explicit, the fact that if there is no patent license agreement or other understanding that would allow a party to move forward relative to existing patent rights, that there is no basis for even having to address the obvious, namely that if there's a patent there that has to be asserted in the future, there shouldn't be any restrictions on challenging that patent. Except there was a release, forever release, Roberts, from any losses, excuse me, cause of action of any kind the Resnick party's ever had. It is very broad, and the only qualification would seem to be in paragraph five, which excludes cause of action arising from exhibit C or D, which were never implemented. Actually, the release is not as broad as the court quoted. It is a long paragraph, and that's the interesting thing. The court was swayed by the fact that there seemed to be a lot of words in each of the release clauses. But each one of them is broad. And the court characterized that it must be broad if you're using 500 words or 300 words or whatever particular number that the court focused on. But the actual release language appears and is qualified at the very bottom of paragraph three. And the language that the court focused on was that it's claims that arise or occur as of the date of the agreement or prior that relate to any plan or effort to research or develop a flying electric generator. That's the scope of the release that was granted. That's not broad, Your Honor. We believe that's very narrow. The exact meaning of that may be up for dispute, but we believe that the meaning does not clearly and unambiguously include a waiver of a right to challenge a patent's validity. Particularly when that release language that I just quoted gave up claims as to Skywind Power, the company that the Resnick parties had sued. It included any claim with respect to the Resnick action, any claim with respect to the Grineer action. But the release specifically did not exclude claims against Roberts himself. Wait a minute. I don't understand that. You say that in a couple of places in your briefs. I just don't understand how you can argue that paragraph three doesn't cover Roberts. He's mentioned specifically in there. What's the point? The point is the type of claims that are released. The type of claims that are released are defined at the very bottom of paragraph three. Well, that's a different argument than saying that Roberts isn't covered by the release. No, Roberts is covered by the release, but claims against Roberts are not waived, have not been forfeited. That's a different argument. Yes, that's the argument that we made in our brief. These particular kinds of claims are not released is what you're saying. Some claims against Roberts are released. Some claims against Roberts are released. They're defined explicitly. And we believe that's really the requirement here is the need for explicit use of terminology. The parties agreed on paragraph 16 of this agreement that only promises that were expressly stated in the agreement are covered by this agreement. And we believe it's real easy to use particular language that mentions patent validity or patent validity challenges. There's no difficulty in using those words to express that intent. And when you are reserving a right to bring a claim against Roberts, which this release language did permit, it's inconceivable that a claim against Roberts would include a challenge of the patent that Mr. Roberts owned, but then read the next clause as somehow waiving or giving up that right of challenge. It's not consistent, nor is it consistent with the court's prior assessment of any language that purports to give up or waive patent validity challenges. The court has always reviewed that type of language narrowly. In any of the cases preceding Flexfoot, the court said that that sort of language should be construed narrowly. This was part of the balancing that the court made to give credence or to give credit to the Lear policy and balance the policies between, in that case, the policy of full and free competition and use of ideas that are really in the public domain, versus those, in the case of preceding Flexfoot, res judicata. The policy was expanded to cover the policy favoring the settlement of cases, but we don't believe that that, in this case, that policy requires or permits broad, vague, oblique general language, and then to have that interpreted as a clear and unambiguous waiver of rights. We think that the Flexfoot case, the court decided, set forth very narrow circumstances under which a waiver can occur. That's the first point of our brief, and that is that it has to be a patent case. It has to be a patent litigation case where patent validity was raised. There was an opportunity through discovery to challenge patent validity, and then that there's clear and unambiguous language that does waive the right to challenge validity, and we don't believe that's a broad standard at all. We believe it's narrow, and in our case, it was not that case. I don't have to read the language of the holding because I think the court is familiar with it, but it was an A plus B plus C requirement. There wasn't just that you had to have a settlement with clear and unambiguous language. It had to be in an occasion where an accused imprinter had challenged patent validity and has had an opportunity to conduct discovery, and then, through the choice of clear and unambiguous language, reflects that they are waiving the right to challenge patent validity. That was the holding of Flexfoot, and that was not a broad holding. So there's no other precedent of this court, and there's no doubt here or challenge that it's this court's authority that controls this. This is not a matter of general contract law. This is a matter of Federal Circuit precedent. The litigation between Baseload's predecessor and Roberts did not involve any claims of patent infringement. Roberts did not raise any defenses of patent invalidity, and the language, as we suggest, is general, oblique, and really can't qualify as an explicit recitation of an intent to be bound by a requirement that you cannot further challenge patent validity. So we think that it was error to apply the Flexfoot case in the particular case that the lower court dismissed. So we would move for reversal on that basis alone. The second point I'd like to address is that the language itself, and I've somewhat alluded to this, did not contain a clear and unambiguous waiver, and there was evidence to the contrary. The court has made some reference to that. One was paragraph 5, which accepted the waivers from applying to Exhibit C and D. The release did not apply to the license agreement. The license agreement itself did not contain any patent validity restrictions. And again, the reservation of the right to sue Roberts directly, we believe, is a counter piece of evidence that the court never weighed below as to whether or not this waiver should be so broadly construed. The agreement says any matter that arises from or relates in any way directly or indirectly to SWPC. Don't the patents relate at least indirectly to SWPC? They were owned by Roberts, and so to the extent there's a connection there, I don't know what it would be. But we believe that the direct connection and indirect connection is through Roberts, who was a party to this proceeding, this prior proceeding. Was there any controversy about infringement at the time of the settlement agreement? No, Your Honor. None. So we think that the requirement for clarity in the absence of ambiguity in the settlement agreement language that purports to waive a patent validity challenge cannot be met by just general language, hopeful, oblique language, that the parties, especially the non-patent case, would ever consider the import as extending to a patent validity challenge. It's easy to express this intent directly and specifically and with particularity. The words exist. If 300 words are broad, 303 to mention patent invalidity challenges would have been no more difficult, and it's known how to express that particular idea. The last point that we wanted to raise is that to the extent FlexFoot is a standard and it somehow can be read to apply to this case, that would constitute an expansion of FlexFoot that we don't think squares with the Lear Doctrine. And we've noted in our brief that the Ninth Circuit Court of Appeals, in an earlier decision that this court did wrestle with, did address in the context of the Foster v. Halco case, but dismissed because it was a settlement agreement case and didn't involve res judicata, should have been reexamined or at least factored into the discussion in FlexFoot. It wasn't. And the Ninth Circuit saw or foresaw that there could be mischief by patent owners who would try to couch a license agreement in terms of a settlement agreement to thwart the Lear policy. It's easy enough to do. And that's an issue I think that this court's FlexFoot decision seems to avoid. It seems to avoid that problem of patent owners using patent litigation as a tool to do an end run around the Lear policy so that the standing and the holding of FlexFoot on its face seems to not run afoul of Lear, but to the extent it would be applied to this case, we think it does. If I'll reserve any balance of time here. Mr. Bissett. May it please the court. This case concerns the importance. Does the settlement agreement release infringement claims brought by Roberts? It depends when they arise. The settlement agreement releases all claims that relate to things that had happened prior to the time of the release. There was no infringement controversy at the time of the release, correct? As far as I know, that's correct. All right. So you then view this as not releasing any infringement claims arising after the release, any future infringement claims? Yes. That's correct, right? Yes. If it didn't have to do with things that happened before the release, then anything is fair game. Well then, if it wasn't intended to release future infringement claims, how can you possibly read it, this general language, as releasing defenses to the infringement claims? It was intended to release anything that had happened prior to the time of the release. No, but you're saying that future infringement claims can be brought, but the infringement, the invalidity defense is waived, right? Yes, because if the infringement claim is based on something that happens after the date of the release, then it's not covered by the release. So you can sue for infringement. Roberts can sue for infringement, and they can't defend on the ground of invalidity. Unless it's based on something that happened after the time of the release. Where in the agreement do you derive any basis for that interpretation? Various provisions of the agreement, Your Honor, all of which are cited in our brief. Well, help me with one. All right, let's do them in order. The recital C, for example, says what it is that the parties are generally trying to do. And what they're trying to do is to settle, compromise, and resolve all of the claims, differences, disagreements, and disputes that may exist, that exist, may exist, or may in the future arise with respect to anything that happened prior to the date of the agreement and the release. But clearly, you're not waiving infringement actions in the future. Otherwise, there would be no reason to provide an option for a license. Nobody would need a license if they were released. Right. So future infringement is not released. And why is future infringement is not released? Why is the future challenge to validity released? Because it is based on things that happened, if it is at least, based on things that happened prior to the date of the release. The things that happened prior to the date of release are the existence of the prior art? Well, I suppose it's the existence of the process by which the patent was applied for, all of which took place prior to the release by four years or something like that. The validity challenge doesn't have to set aside the issuance of the patent. It just says that here in the present tense, we're looking at the prior art, and we decide that the patent's invalid for anticipation or obviousness. Well, but the argument would be, or at least the argument that's being made in the complaint in this case, is that there was a failure to disclose any of that stuff, and so on and so forth. And the process by which the patent was gotten was fraudulent. They're not raising anticipation and obviousness? I think if you look at the complaint, it's like a laundry list of every conceivable challenge that somebody might make to a patent. So they are raising anticipation and obviousness. They are saying, I guess, this may be a question addressed to them, but they are saying, I guess, that Robert should have done something in applying for the patent that he didn't do, or that he did something that he shouldn't have done as part of that process. But whatever it is, it all took place years before this release was done. What about a validity challenge based upon a newly discovered piece of prior art? Would that be released? Yes, and that's because the release covers things that are known and unknown, expected and unexpected. Well, that breadth of reading would mean that infringement claims are gone, too. Yes, if they relate to things that happened prior to the time of the release. But your argument is that it relates to future events, future challenges to validity, future infringement. So you're saying that without any specific language, this agreement gives you the right to sue for patent infringement without having to worry about an invalidity defense or, in fact, any other defense, right? If it is based on something that happened prior to the date of the release. That was the whole point. The whole point was to dispose of an illimited art. You're saying it eliminates an invalidity defense, period, right? Or can you tell me some situation in which an invalidity defense could be asserted? Anything that is based on something that happens after the date of the release could be part of some future litigation. How can an invalidity defense, in your view, arise after the date of the release?  And as part of this settlement agreement, each side represented to the other that they were unaware of any facts that had occurred that had given rise to a claim or might in the future give rise to a claim that wasn't being covered by the release. We were trying to buy our peace to get away from this dispute once and for all. And that's what this did. It released everything. That was the whole point of it. Except future infringement claims. Well, any future claims. I mean, if the other side were to say that Roberts or any other people that are being released did something in the future after the time of the release, the release wouldn't cover it. It's like you can't get a release for future wrongs that you might commit. That was the whole point. Are you saying the district court was wrong when it said the very breadth and detail of the release provisions convinced the courts that the parties to the agreement intended to preclude any further litigation by one set of parties against the other? No, I agree with that entirely. That was what we were trying to do with respect to anything that had happened. Any further litigation except for patent infringement? Well, we weren't trying to make an exception particularly for that. What we were saying is we were trying to settle everything that we can settle, which is everything that relates to something that has happened already, whether it has given rise to a claim right now or whether in the future it might give rise to a claim. That's all out. Except for patent infringement. Well. Because obviously otherwise there would be no need for an option and a license. If you're released, you're released. So the release did not extend to future patent infringement. Well, the idea was that BEI would have an option to acquire a non-exclusive license to this patent. They would need a license if they were released, right? Right. So they're not released for patent infringement. For future things that they might do that would amount to patent infringement. Precisely. Yes, that's right. But somehow you're reading this agreement to foreclose defenses to that suit. And that's what I'm having difficulty with. Well, what we were trying to do, and I'm not adding to the record here, I'm just going on what the language was of the contract, was to put any conceivable disputes that had already arisen behind the party so they could go on about their business. And as far as the use of this patent was concerned, there was an option given to BEI, I think it was six months approximately, within which they could decide whether or not they wanted to take a non-exclusive license, which was really nothing more than a covenant not to sue because it was as bare bones as you could make it, to this patent. And if they wanted to do that, they would give notice and they would pay the money and they would be a non-exclusive license so they could go about their business. And as part of that license that would come out of that option process, they would be able to do whatever they wanted to, free and clear of any claim for infringement. But they would be foreclosed from challenging the patent's validity. Yes, because it is something, at least if that challenge, and it presumably would be the way it would come up, related to the patent application process because by definition that had taken place years before the date of the release. Was there any controversy at the time the settlement agreement was signed about the validity of the patent? What Resnick and his company were trying to do throughout this entire process was to get control of this patent or failing that, access to it. No, but you're not answering my question. Was there a dispute between the parties as to patent validity before the settlement agreement was signed? No. What Resnick wanted, his original lawsuit claimed that he was entitled to control this patent. That there had been a deal between the parties under which Roberts would assign this patent to a company that Resnick controlled in return for which Resnick would go out and raise $30 million. And he attached to his complaint a contract, essentially. And what it said was that it would take effect when it was signed, which you would expect in some kind of a deal that involved $30 million. It was never signed. So we, in California, the process is a demurra. It's essentially a motion to dismiss. And we said, well, wait a minute here. What he alleges is inconsistent with his own exhibit, which sets forth what the party's deal was. It's a standard demurra with leave to amend. He amended by taking out the exhibit without any explanation. We moved again. While that motion was pending, he dismissed the state court case and filed it in federal court. We filed a motion to dismiss based on the same argument that had prevailed in the state court. What happened was the court dismissed that case for want of subject matter jurisdiction because he had not properly alleged that he was a citizen of the state other than where the other people were. And as part of the settlement, so our motion to dismiss never got decided. But as part of the settlement, we required that they go back and they amend their complaint so it would be within the federal court's jurisdiction. So that when there was a dismissal, a consent order, if you will, a dismissal with prejudice of this underlying lawsuit, it would be an order. So that if somebody came along later and tried to make a claim that was within the scope of the release or within the scope of the dismissal with prejudice, it would be a good remedy. It would be something that said, all right, you can't do this. Now, what we could have done in response to this lawsuit is we could have gone back to the Southern District of California and sought an injunction because this is in contempt of that order. But it seemed like the cheaper way to do this was to respond in the District of Columbia District Court in the way that we did. And because it's not hard to, you know, I'm sorry, but I don't think it's really hard to interpret the settlement agreement to fulfill the party's desires to get away from one another once and for all. That's what's in the recital. That's what's in the releases. You'd be satisfied with a holding that you couldn't sue for infringement and they can't defend on the ground of invalidity? Yes. I think that's not really what the settlement agreement is. But all we want to do is get away from these people once and for all. In my view, Your Honor, I reserve this for special occasions. I think this appeal is frivolous. And I don't really believe it. Listening to this argument, you think the appeal is frivolous? Yes. I'm sorry, Your Honor. I mean, the document says what it says. Settlement agreement. Judge Friedman said it's plain, it's clear. We certainly tried to make it as plain and clear as we possibly could, that it was designed to cut off everything that had happened up until the time of the release. And indeed, if you could release everything in the future, we would have done that too. Except it doesn't make any sense, as the court says, in the context of what was coming out of this deal was an option to acquire a license. And if the option was exercised, the license itself. And they would pay the money and they could go out and do whatever they wanted to using the patent. And that would have been fine. It wasn't our first choice, but that would have been fine. And that was the consideration that was given in order to get out, get away from this whole dispute. Roberts, as you know, is from Australia. And there's nothing that people outside the United States hate more, I think, than the litigation process. They don't understand it. People just don't sue each other all the time like they do here. The whole point of this was to make sure that this didn't happen again, that there was no more litigation between these parties. And we worked hard to bring that result. It's reflected in the recital. It's reflected in the release. It's reflected in the waiver of Section 1542 of the California Civil Code, which says that there are situations in which maybe a release shouldn't cover some claims, which probably people wouldn't have wanted to release if they had known what all the facts were. Everybody in the settlement agreement in California waives that statute, because otherwise you run the risk that you aren't really getting what you're bargaining for, namely, peace. Mr. Bissett, I think we have your argument. Thank you very much. Thank you, Your Honor. Mr. Wyrock has a couple minutes rebuttal. Your Honor, unless the Court has any further questions, we waive our balance of our time. Fine. We'll take the case under advisement. Thank you, Your Honor. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m.